LARIO, J.T.C.
The matters presented herein were instituted by the filing of two separate summary judgment motions by taxpayer, one for the tax year 1986 and the other for the tax year 1987, to freeze assessments on its property pursuant to the provisions of N.J.S.A. 54:51A-8, commonly referred to as the Freeze Act, to the assessments entered by the 1985 base year judgment. By reason of the identity of the parties and the subject property the two matters are being considered together in this consolidated opinion.
Cumberland Arms Associates (Cumberland Arms) is the owner of garden-type apartment buildings located on Mt. Holly Road, Burlington Township and identified on the tax map as Block 114, Lot 14.02. On March 27, 1986 a final judgment based upon a stipulation of settlement was entered by this court reducing the assessment on the property in question for *257 the 1985 tax year (a revaluation year) from: Land — $304,000, Improvements — $1,947,800, Total — $2,251,800 to: Land — $304,-000, Improvements — $1,696,000, Total — $2,000,000.
In January 1986 the township’s tax assessor had certified the assessment on the subject property as of October 1, 1985 for the tax year 1986 as follows: Land — $304,000, Improvements— $1,947,800, Total — $2,251,800.
On August 14, 1986 the taxpayer filed with this court a direct appeal (as permitted by N.J.S.A. 54:3-21 because the assessment was in excess of $750,000) alleging that the 1986 assessment was above true value and that it was discriminatory.[1] On September 5, 1986 the taxing district filed an answer to this complaint denying the allegations of the complaint.
On July 6,1987 the taxpayer filed a motion to freeze the 1986 assessment of the subject property to reflect the assessment as finalized by the 1985 tax year judgment. The taxing district opposed this motion by filing a certification of its tax assessor alleging that the true value of the subject property had increased in value between October 1, 1985 and October 1, 1986.
For the tax year 1987 the taxing district increased the property’s assessment as of October 1, 1986 to: Land — $845,000, Improvements — $2,090,000, Total — $2,935,000. No revaluation was implemented by Burlington Township after 1985. On August 14,1987 Cumberland Arms filed with this court a direct appeal for the tax year 1987 alleging that the property’s assessment was above true value and discriminatory.[2] On August 26, 1987 the township filed an answer denying plaintiff’s allegation and containing a counterclaim which demanded an assessment increase alleging that “the assessment is less than the true *258 value of said property.” Shortly thereafter, the taxpayer filed a motion for summary judgment to also freeze the 1987 assessment on the subject property to its 1985 tax year judgment.
The Freeze Act applicable to Tax Court judgments directs:
Where a final judgment has been rendered by the tax court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in value of the property occurring after the assessment date. Where those changes are alleged, the complaint shall specifically set forth the nature of the changes relied upon as the basis for the appeal. However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect. [N.J.S.A. 54:51A-8]
In interpreting this act Judge Dreier stated in Clearview Gardens v. Parsippany-Troy Hills Tp.:
The wording of the Freeze Act shows that its application is mandatory and self-executing. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162, 166-168 [110 A.2d 110] (1954)
Each tax assessor in this State is bound to assess the property at its fair market value as of October 1st of each year (N.J.S.A. 54:4-23), unless the statutory law or a final judgment of a county board or court of competent jurisdiction directs otherwise. The Tax Court Freeze Act quoted above [N.J.S.A 54:51A-8] and the County Board Freeze Act (N.J.S.A. 54:3-26) impose a different duty upon the assessor, [footnote omitted]. The statutes specifically provide that where there has been a change in value occurring after the assessment date, the Freeze Act valuations may be modified where a complaint is filed alleging such change or if there is a general revaluation of real property in the community.
If the final judgment is rendered prior to the assessing date, the assessor should note the change for the two freeze years as well as for the year adjudicated by the court. If, however, the final judgment is rendered after the assessing date, and the assessor has followed the mandate of N.J.S.A. 54:4-23, listing the properties at his higher assessed value, some action need be taken by the taxpayer to effect a change in this assessment. As noted by Judge Evers in Curtiss Wright Corp. v. Wood-Ridge, “[i]n such instances it is necessary for the property owner to affirmatively seek the application of the freeze act.” 4 N.J. Tax [68] at 73 [1982], Once this information is brought to the assessor’s attention, the mandatory and self-executing nature of the Freeze Act requires the assessor to comply. The taxpayer need not submit any affidavits concerning the lack of change in value or that there has been no general revaluation. [196 N.J.Super. 323, 328-329, 482 A.2d 523 (App.Div.1984)]
The facts applicable to the instant motions disclose that the 1985 judgment was a final judgment entered on March 27,1986, *259 which was after the 1986 tax year assessment had been certified, but prior to the 1987 assessing and certification dates. Therefore, as to the 1986 tax year, as noted by Judge Evers and cited with approval by Judge Dreier in Clearview Gardens, supra, it was necessary for the property owner to affirmatively seek the application of the Freeze Act for relief, which it did. By reason of the township’s claim that after the 1985 judgment’s assessing date the subject property’s value changed sufficiently to remove the 1986 assessment from the binding effect of the Freeze Act, a factual hearing, as hereinafter discussed, wac held to resolve this issue.
However, as to the taxpayer’s motion addressed to the 1987 assessment, pursuant to the principles enunciated in Clearview Gardens, supra, since the final judgment was entered prior to October 1, 1986, the mandatory and self-executing nature of the Freeze Act required the assessor to comply by applying the 1985 assessment for the tax year 1987. Id. at 329, 482 A.2d 523. Had the township wished to avoid the judgment's binding Freeze Act effect for the 1987 tax year based upon an allegation of change in value, the township was first compelled to have filed a complaint alleging a change in value and it must have specifically set forth therein the nature of the changes relied upon. N.J.S.A. 54:51A-8; Clearview Gardens v. Parsippany-Troy Hills Tp., supra, 196 N.J.Super. at 330, 482 A.2d 523; AKLS Realty Assoc., Inc. v. Burlington Township, 10 N.J.Tax 1 (Tax Ct.1988). See also Passaic v. Passaic Industrial Center, Inc., 59 N.J.Super. 174, 157 A.2d 539 (App.Div.1960), wherein, referring to the Freeze Act then applicable to the former Division of Tax Appeals, Judge Goldmann, speaking for the Appellate Division, concluded:
The petition of appeal to the Division must specifically set out the nature of the changes relied upon as a basis for the appeal____ [If a taxing district’s appeal is predicated] upon an increase in the true value of the property for that year over the prior base year or years____it was obliged to state that fact in its petition and to specify precisely the nature of the change in value on which it relied, knowing that otherwise it would be bound by the final determination which the Division might render in the appeal for the prior base year or years, [at 179-180, 157 A.2d 539]
*260 Since Burlington Township failed to file a Freeze Act avoidance complaint relative to the subject property’s 1987 assessment, the subject property’s 1985 final judgment is binding and conclusive for the tax year 1987. Cumberland Arms’ motion for summary judgment to reduce the 1987 assessment to the 1985 judgment of: Land — $304,000, Improvements — $1,696,000, for a total of $2,000,000 is granted.
For the tax year 1986, since the 1985 final judgment was rendered after the October 1, 1985 assessing date and because in assessing the property for 1986 the assessor “followed the mandate of N.J.S.A. 54:4-23, listing the properties at his higher assessed value, some action need[ed to] be taken by the taxpayer to effect a change in this assessment.” Clearview Gardens, supra, 196 N.J.Super. at 329, 482 A.2d 523. In accordance therewith the taxpayer filed its initial motion herein to freeze the 1986 assessments. Because no district-wide reassessment was implemented, absent proof by the township of a change in value as contemplated by the act between October 1, 1984 and October 1,1985, application of the Freeze Act is also mandatory for the tax year 1986. Whereas the township objected, alleging a change in value, as heretofore stated a factual hearing was conducted to resolve this issue.
In contesting the taxpayer’s Freeze Act motion for the tax year 1986, to support its allegation the township filed a certification by its present assessor. He stated he became the assessor on January 1, 1987 after which he conducted a sales-market study and an income study for a true value analysis of all apartment complexes in the township “as of October 1, 1984 to the present for the purpose of increasing the value of the apartments for the tax year 1987.”
He further certified that as a result of his study:
[T]he true value of the subject premises, Block 14 [sic ] Lot 14.02 has increased as follows:
(a) In 1985, as of October 1, 1984, $2,500,000.[3]
*261 (b) In 1986, as of October 1, 1985, $3,500,000.
(c) In 1987, as of October 1, 1986, $4,350,000.
4. Hence, the subject property, as has all apartments in the Township of Burlington, increased in value approximately twenty-five percent (25%) each year while the general increase in true value for all classes of property in the Township of Burlington is approximately ten percent (10%) per year for the years 1985 to present.
5. The substantial increase in apartment values is due to a variety of factors including, but not limited to, the following:
(1) The development of industrial and commercial areas in the Township of Burlington, Mt. Laurel and Evesham and other areas of Burlington County;
(2) The absence of new apartment construction for Burlington County for fifteen (15) years;
(3) The increased demand for apartments due to the increase of population generated by the industrial and commercial growth thereby increasing rental receipts and other demand factors;
6. For the tax year 1987, I have been informed that the taxing district of the Township of Burlington intends to file an appeal from the 1987 assessment of the subject premises along with appeals of other properties.
7. In my opinion as a Tax Assessor, the subject premises has experienced since 1,984-85 a change in value sufficient to negate the applicability of the Freeze Act.
At the factual change-in-value hearing the sole evidence presented by the township to support its contention of a change in value was the testimony of its assessor which essentially was as follows.
He had not done an independent market value appraisal to arrive at a true value for the subject property as of October 1, 1984. Instead, his opinion of value for the tax year 1985 was obtained from a review of the assessor’s records as of that date.[4] He first inspected the subject property in June 1987 at which time he spoke with the apartment manager, reviewed the rent rolls and floor plans of the model apartment and walked the premises. He was given access to the “rentals that were in place” in 1985, 1986 and 1987. He, however, was unable to review the expense statements because the manager was not fully aware of them. He also examined the assessor’s property *262 record card that had been prepared in 1983 for the 1984 tax year.
Based thereon, in 1987, he prepared a true value appraisal of the subject property as of October 1,1985 for the tax year 1986 applying the market, capitalization and cost approaches to value. He utilized the market approach by an analysis of four sales of apartment complexes which he adjusted and compared to the subject property whereby he concluded a sales-approach value of $3,600,000.
Although the assessor testified to portions of his respective cost and capitalization approaches to value for this property as of October 1, 1985, the municipality did not offer in evidence this expert’s conclusions of value by these two approaches because in his cost approach he was unable to support the land values utilized; and, as to his capitalization approach the basis for the economic rents and expenses utilized by him to arrive at a conclusion of net income were lacking.
After cross-examination of the township’s expert and close of township’s case-in-chief, the taxpayer did not place in evidence any affirmative proof. At this juncture of the proceeding the taxpayer rested its case and renewed its motion for summary judgment alleging that the township had failed to establish, by sufficient competent evidence, a change in value sufficient to defeat the applicability of the Freeze Act.
Before analyzing the competency of, and the weight to be attributed to, the township’s evidence this court must first ascertain the standard of proof required. To avoid application of the Freeze Act for the tax year 1986 the township had the burden to present competent proof that after the assessing date of the base year there occurred changes in the value of the subject property as contemplated by the Freeze Act. N.J.S.A. 54:51A-8. As set forth in Inganamort Bros. v. Ft. Lee Boro., 7 N.J. Tax 564 (Tax Ct.1984), aff’d 202 N.J.Super. 87, 493 A.2d 1304 (App.Div.1985):
The election to have the Freeze Act apply is solely at the option of the taxpayer. Hasbrouck Heights v. Tax Appeals Div., 41 N.J. 492, 197 A.2d 553 (1964). In *263 order to prevent its application in this case, the borough had the burden of proving a change in value from the base year. See So. Plainfield Tp. v. Kentile Floors, Inc., 92 N.J. 483, 457 A.2d 450 (1983). [7 N.J. Tax at 576]
This raises the question as to what type of change must occur and to what extent must the value caused by the change increase to defeat the application of the Freeze Act. This court concludes that in order for a taxing district to satisfy its burden of proof to defeat application of the Freeze Act it must first demonstrate by competent evidence that the alleged change is the result of either an internal or an external change that materialized subsequent to the assessment date of the base year and that the change substantially and meaningfully increased the property’s value.
Examples of changes internal to the property are physical refurbishment of the building or additions thereto such as added wings or added floors, which changes are easily ascertainable. However, changes external to the property are not so easily ascertainable; examples of this latter type of change are extreme economic changes within the close proximity of the subject property thereby increasing property values within its vicinity, as claimed in Wayne Tp. v. Robbie’s, Inc., 118 N.J.Super. 129, 286 A.2d 725 (App.Div.1972), certif. den. 60 N.J. 351, 289 A.2d 796 (1972) and, as asserted in Hudson Terrace Apts. v. Ft. Lee Boro., 191 N.J.Super. 489, 467 A.2d 1092 (App.Div. 1982) (substantial increases in apartment house values resulting from accelerated conversion of such property to cooperative and condominium units). Also included in this category is a zoning change affecting the subject property and/or the property within its immediate vicinity which increases the subject’s value. An additional example of external change was the increase in property values in Atlantic City resulting from the 1976 constitutional amendment permitting casino gambling. Immediately after the election property values, both within and surrounding the proposed casino district, sky-rocketed in value.
The Freeze Acts originally were enacted under Laws of 1946, chapter 161, section 14 (pertaining to final judgments of the Division of Tax Appeals, precursor to this court) and section 18 *264 (an almost identical provision applicable to county boards of taxation). The purpose of both Freeze Acts was to prevent yearly increases in a taxpayer’s real estate tax assessment which were not related to changes increasing the property’s value, thereby avoiding vexatious and costly annual appeals.
The evil which the “freeze” statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board. [Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951) ]
For many years the county boards of taxation and the Division of Tax Appeals interpreted “except as to changes in value of the property occurring after the assessing date” to mean an added-to or improved physical change to the property sufficient to sustain an added assessment.
In 1972, the Appellate Division enlarged this interpretation to include those changes which were external to the property, potentially increasing its value. Wayne Tp. v. Robbie’s Inc. 118 N.J.Super. 129, 132-133, 286 A.2d 725 (App.Div.1972), certif. den. 60 N.J. 351, 289 A.2d 796 (1972). There, to defeat the application of the freeze the township was permitted to present proof that “one of the world’s largest shopping centers” had been constructed in the vicinity of the subject property, thereby causing a change substantially increasing the property’s value. 118 N.J.Super. at 132, 286 A.2d 725.
In 1982 in Hudson Terrace Apts. v. Ft. Lee Boro., 191 N.J.Super. 489, 467 A.2d 1092 (App.Div.1982), the Appellate Division recognized another type of external change having the potential to affect a property’s value sufficiently to defeat the freeze, to wit: the borough’s claim that apartment house values within the district had increased substantially since the assessing date of the base judgment year by reason of accelerated conversions of such properties to cooperative and condominium units.
In Rothman v. River Edge Boro., 149 N.J.Super. 435, 440, 374 A.2d 36 (App.Div.1977), certif. den. 75 N.J. 19, 379 A.2d 250 (1977), the Appellate Division implied that increases in value to *265 defeat application of the Freeze Act must be substantial. In Inganamort Bros. v. Ft. Lee Boro., 7 N.J. Tax 564 (Tax Ct.1984), aff’d 202 N.J.Super., 87, 493 A.2d 1304 (App.Div.1985), certif. den. 102 N.J. 304, 305, 508 A.2d 190 (1985) although this court considered the application of the 15% range contained in c. 123 of the Laws of 1973 (N.J.S.A. 54:51A-6) to trigger a change as “appealing,” it did not apply it stating: “In any event, it is obvious that the change in value should be a meaningful change.” 7 N.J. Tax at 577. It then analyzed the consumer price index [CPI] which it considered together with the record as a whole to support its finding that compared to the increase in the CPI, the subject property’s percentage increase in value over its base year was not a “meaningful change.” Ibid.
In Mediterannean House v. Ft. Lee Boro., 7 N.J. Tax 528, 535-537 (Tax Ct.1985) Judge Evers of this court rejected both the “substantial increase test” as implied in Rothman and the CPI comparisons considered in Inganamort Bros, as measures of a “meaningful” change. He also rejected the argument that “any change,” no matter how slight, would work to avoid the freeze. Instead, he found as a “better method”:
... to examine the rise and/or fail of real property values in the specific market place in which the subject property is located. This is accomplished through a review of the Division of Taxation Director’s determination of average ratios for each taxing district which is published yearly pursuant to N.J.S.A. 54:1-35.1 et seq. [chapter 123 ratio test; Id. at 537]
Prior to arriving at this conclusion, Judge Evers noted that in International Fastener Research Corp. v. Kearny, 2 N.J. Tax 494 (Tax Ct.1981) the court had rejected the taxing district’s contention that changes in the chapter 123 ratios were sufficient to defeat the freeze. He then stated:
A taxing district cannot have it both ways. It cannot defend its assessments through the use of a Murnick umbrella on the one hand and, on the other, ignore the Murnick protections in attempting to defeat a taxpayer’s application for the freeze. [7 N.J. Tax at 536]
The court thereby logically acknowledged that once the change has been triggered, since chapter 123 is automatically involved in all appeals for non-revalued years, Murnick v. *266 Asbury Park, 95 N.J. 452, 471 A.2d 1196 (1984), the quantum of increase a fortiori must exceed the base year assessment by the 15% ratio of chapter 123.[5]
The dilemma created by the application of the above “substantial” and “meaningful” standards, plus his own test was aptly acknowledged by Judge Evers in Mediterannean wherein he stated:
In finding that the taxpayer is entitled to the benefits of the freeze act the court is not suggesting that the formula employed herein is inexorable for all cases. However, the language of Chief Justice Weintraub in In re Appeals of Kents, 34 N.J. 21, 166 A.2d 763 (1961), in which he solved the dilemma theretofore confronting taxpayers who, having proved discriminatory assessments were nevertheless without a remedy, by applying the average ratio to true value, is appropriate here. He said "[U]ntil some better technique appears or some other suitable one is provided by statute, we are satisfied to utilize the average ratio in cases such as the one before us.” Id. at 33, 166 A.2d 763 [Emphasis supplied]. [7 N.J. Tax at 538]
The standards applied in Rothman, Inganamort and Mediterannean in reality are tests to measure the degree or amount of change. Permitting a taxing district to sustain a Freeze Act avoidance complaint by merely demonstrating a substantial degree of increased value by any of the normally recognized approaches to value, such as cost, market or capitalization of income, without more, would be contrary to, and inconsistent with, the purpose of the Freeze Act. Newark v. Fischer, supra. If the applicable standard was simply the degree or amount of change, to determine that amount this court would be required to ascertain the true value of the property for the requested freeze year from which would be deducted the base year value. To achieve this determination requires a full valuation hearing. Accordingly, under such a theory a property owner would be required first to secure and present a complete true value appraisal at a change-in-value hearing in order to avoid preparing and presenting a true value appraisal at a subsequent valuation hearing to defend that his *267 assessment should not be increased.[6] Such a result is illogical; it would render the Freeze Act meaningless because every allegation of an increase in value in a Freeze Act proceeding would require preliminarily a full hearing to determine the full and fair value of the property thereby subjecting the property-owner to the very evils which the statute sought to remedy.
That a full and fair market value standard to ascertain a change in value is not the test was explicitly recognized by Judge Drier in Clearview Gardens, supra, wherein he set forth the procedure to be followed by the taxpayer where, as in the instant case, the final judgment was entered after the assessing date following the judgment year: “If, however, the final judgment is rendered after the assessing date, and the assessor has followed the mandate of N.J.S.A. 54:4-23, listing the properties at his higher assessed value, some action need be taken by the taxpayer to effect a change in this assessment.” 196 N.J.Super. at 329, 482 A.2d 523. The mandate to the assessor by N.J.S.A. 54:4-23 is that he “determine the full and fair value of each parcel of real property ... at such price as, in his judgment, it would sell for at a fair and bona fide sale____”
Although the Freeze Act uses the words “changes in value” it is obvious that the Legislature intended a change other than solely an increase in fair market value. As was recognized by Judge Evers in Mediterannean House, supra:
I do agree that the Legislature did not intend that any change, no matter how slight, would work to avoid the freeze. The use of ‘any change’ as a standard could render the freeze act virtually useless and would clearly defeat its purpose, for rarely, if ever, does a property, and particularly an investment property, not undergo a change in value from year to year. [7 N.J. Tax at 535]
I concur with that conclusion, and, in furtherance thereof, I also believe that the Legislature did not intend “changes in value” to include an increase in true value of income producing property resulting from lower capitalization rates occasioned by a precipitous drop in double-digit interest as occurred recently or *268 resulting solely from general district-wide inflation. Compare Great Notch v. Little Falls Tp., 6 N.J. Tax 316 (Tax Ct.1984) (“The strong public interest in assessment stability and its corollary, stable, predictable municipal revenues, require that tax assessments not be hostage to sharp fluctuations traceable to volatile swings in the financial markets.” Id. at 332). As noted by our Supreme Court in New Capitol Bar & Grill Corp. v. Div. of Employment Sec., 25 N.J. 155, 135 A.2d 465 (1957):
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatabile with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end ‘words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms.’ Alexander v. New Jersey Power & Light Co., 21 N.J. 373, 378, 122 A.2d 339 (1956) [25 N.J. at 160, 135 A.2d 465]
It is well settled that in construing a statute the court is not to be guided by a single sentence or the words of a sentence but must look to the provisions of the whole law, and to its object and policy. Starrett v. Starrett, 225 N.J.Super. 150, 157, 541 A.2d 1119 (App.Div.1988). In searching for the true understanding and proper application of a statute the language must be read perceptively and sensibly with a view toward fulfilling the Legislature’s intent. Unemployed/Employed Council of New Jersey, Inc. v. Horn, 85 N.J. 646, 655, 428 A.2d 1305 (1981).[7]
The obvious purpose of the Freeze Act was recognized by our Supreme Court in Riverview Gardens v. N. Arlington Boro., 9 N.J. 167, 87 A.2d 425 (1952) wherein the Court emphasized that even if the judgment assessment was too low, it may be frozen under the act; and, that the Freeze Act application hearings held by the county board and the Division of Tax Appeals were *269 not fair market-valuation hearings but instead were “mere adjective determinations.” Id. at 173, 87 A. 2d 425. There, originally the county board and the Division of Tax Appeals, after conducting Freeze Act application hearings, entered judgments applying the Freeze Act for 1948 and 1949 based upon 1947 tax year judgments covering three separate properties. Thereafter, the property owners’ applications for two additional freeze-year judgments were denied by the county board and by the Division. Upon appeal to the Supreme Court each property owner asserted that the 1949 final judgment determining that no change in value had occurred since 1947, constituted a determination of the true value of the property for 1949, and therefore, it was a final judgment entitled to the benefits of the Freeze Act. Our Supreme Court rejected this argument stating:
This is not so. An assessment that is either too high or too low may be “frozen” under the cited statutes and remain so for the statutory period unless there were changes in the value of the property “after the assessment date.” It follows that the denial of increase or decrease in assessment during the “freeze” period is a mere determination that no change in value of the property occurred after the assessment date for the base assessment year, and is not a determination that the assessment for that base year (or for the subsequent assessment year to which the determination is directed) is a true value of the property within the scope of the statutory standard. [Emphasis supplied] The base “assessment year” and the “assessment date” specified in the statute are necessarily those at which the last true valuation of the property was determined by the assessor on the merits. The record is clear that in this case that assessment year for which such determination was made was the 1947 assessment year. The action of the county board and that of the Division of Tax Appeals were mere adjective determinations that the 1947 assessment controlled for the assessment years of 1948 and 1949, and were thus determinations that no new assessment should have been attempted. [Emphasis supplied] The only reasonable application of the words “except as to changes in value after the assessment date” results in this conclusion. The application of the statute sought by the appellants is not in accord with the legislative intent. Compare Newark v. Fischer, 8 N.J. 191, 199 [84 A.2d 547] (1951) [9 N.J. at 173, 87 A.2d 425]
As emphasized, the Supreme Court concluded that the change-in-value hearings were “mere adjective determinations ... that no new assessments should have been attempted,” and that the respective determination made thereby was not “a true valuation of the property within the scope of the statutory *270 standard.” Ibid. The “statutory standard” referred to is: “the true value of such real property,” N.J.S.A. 54:4-2.25, which is the full and fair value of the property determined at “such price as ... it would sell for at a fair and bona fide sale by private contract.” N.J.S.A. 54:4-23. Thus, the Court specifically acknowledged, and by affirming, approved that the change-in-value hearings were not held to ascertain the true market values of the properties for the subsequent years.
The Supreme Court had occasion again to consider the Freeze Act in Hasbrouck Hgts. Boro. v. Tax Appeal Div., 41 N.J. 492, 197 A.2d 553 (1964) which involved appeals from Division of Tax Appeal’s Freeze Act judgments for the tax years 1961 and 1962 based upon its base year judgment of 1960. The borough previously had appealed to the Division of Tax Appeals, county board judgments reducing the taxpayer’s 1960 tax assessments. The facts therein as related by the Supreme Court were as follows:
[Before the Division in the 1960 appeals] [t]he Borough’s witness, an accountant, testified, over objection, not as a real estate expert, but as a member of the Borough’s board of assessors. His opinions were accorded very little weight because of his lack of competence in this area and because he admittedly did not know the true value of the property. The Division noted that the taxpayers’ real estate expert gave “clear and lucid” testimony of the true value of the property, found that the testimony preponderated in favor of the taxpayers and dismissed the appeal. [Id. at 494, 197 A.2d 553]
[By the date that the 1960 appeals had become final] the Borough had assessed the properties in the same amounts for the tax years 1961 and 1962 as it had for 1960. On the taxpayers’ appeal to the Bergen County Board of Taxation, the 1961 and 1962 assessments were reduced to the 1960 amounts. On appeal to the Division of Tax Appeals, the Borough contended that the reduced assessments were ‘less than the true value of such property’ and ‘below the percentage of full value of assessment of comparable property in the Borough.’ In opposition to the taxpayers’ motions for summary judgments, the Borough filed affidavits showing that on October 19, 1962 it had engaged experts who had reappraised all the property in the Borough and whose appraisals indicated that defendants’ properties should have been assessed at still different figures in between those of the county board and of the Borough’s assessor. The Division of Tax Appeals granted taxpayers a summary judgment on the grounds that, under the Freeze Act, the 1960 proceedings and determinations precluded higher assessments for 1961 or 1962. [Id. at 495, 197 A.2d 553]
*271 In affirming application of the Freeze Act to the subsequent years 1961 and 1962 the Supreme Court noted: “Obviously the Borough’s reappraisal [by its experts engaged in 1962 which indicated that the taxpayers’ properties should have been assessed differently from the base year judgment] was not in existence when the 1961 and 1962 assessments were made.” Id. at 496, 197 A.2d 553. It then iterated its holding in Riverview Gardens, supra, that “an assessment that is either too high or too low may be ‘frozen’ ...,” and concluded: “Thus, the Borough may not relitigate the 1960 assessments issues in the 1961 and 1962 appeals merely because it has obtained additional — or—better evidence.” Id. at 496-497, 197 A.2d 553.
If the standard to be used to ascertain whether a change in value sufficient to defeat the freeze has occurred was either the “meaningful” or the “substantial” test or an “examination of the rise and fall of real property values in the specific market place” method, in order to apply any of these tests, this court would be required to determine the true value of such property. The method to determine true value is the “statutory standard,” (fair market value as set forth in N.J.S.A. 54:4-23) which method was expressly rejected in Riverview Gardens, supra and Clearview Gardens, supra, as the standard to be applied in Freeze Act application hearings. It is obvious that the Court in Riverview Gardens, supra and Hasbrouck Heights, supra construed a Freeze Act application hearing to be other than a regular fair market valuation hearing. To hold otherwise would “not [be] in accord with the legislative intent,” 9 N.J. at 173, 87 A.2d 425, in that to defend a fair market valuation hearing the taxpayer would be required to incur the expense of hiring a real estate appraisal expert to prepare and testify to a full true value appraisal “merely because [the taxing district] has obtained additional — or—better evidence,” Hasbrouck Heights, 41 N.J. at 497, 197 A.2d 553, “[t]he evil which the ‘freeze’ statute sought to remedy.” Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951).
In the present case the township’s new assessor obviously disagreed, not only with this court’s 1985 judgment, but also, *272 with the revaluation firm’s 1985 value as reflected in the original assessment. By applying the statutory standard of the market approach, he valued the subject property at $500,000 above the $2,000,000 judgment for 1985 and approximately $250,000 higher than the township’s original assessment. Here, as in Hasbrouck Heights, the reappraisal by the township’s new assessor made in 1987 was not in existence when the 1986 assessment was made. The township may not relitigate the 1985 valuation issues in the 1986 appeal merely because it has obtained additional or better evidence. This type of proof was expressly rejected in Hasbrouck Heights and disavowed by Riverview Gardens.
Additionally, in response to the expert’s conclusion that all apartments within the township had increased in value approximately 25% annually, I find that Judge Hopkins’ observation in Inganamort Bros. v. Ft. Lee Boro., to be appropriate:
One must also keep in mind that there are periods when real property values are rising at a relatively uniform rate throughout the taxing district and to compare the value of one property with its value in a prior year, without taking such uniform increases of value into consideration, would not coincide with the relief sought to be given to taxpayer through the enactment of the Freeze Act. [7 N.J. Tax 564, 577]
Therefore, as heretofore concluded, in order for a taxing district to defeat the two-year freeze mandated by the Freeze Act by an allegation of change in value, a “better technique” is that the taxing district must first demonstrate that the alleged change is the result of either an internal or an external change occurring after the base-year assessing date which substantially and meaningfully increased the property’s value. A presentation that the subject property’s alleged increased value is the result solely of general inflationary trends, as was attempted here, fails to meet this test.
Burlington Township has failed to establish that a change in value for the subject property, as contemplated by the Freeze Act, occurred after the 1985 assessing date, therefore, Cumberland Arms is entitled to Freeze Act relief for the tax year 1986. It is directed that summary judgment be entered reducing also *273 the 1986 assessment on Block 114, Lot 14.02 to the 1985 base year assessment of:
T .and: $ 304,000
Improvements: $1,696,000
Total: $2,000,000

This 1987 appeal was also described by taxpayer as a "protective appeal” which, like the 1986 appeal, will be withdrawn if it is successful on this motion.

The assessment for 1985, a revaluation year, by Tax Court judgment was $2,000,000.

The prior assessor's original assessment for the tax year 1985, a revaluation year, was $2,251,800 reduced by stipulated judgment to $2,000,000.

In Inganamort Bros. v. Ft. Lee Boro., supra, since the Appellate Division affirmed the trial court's conclusion that no change in value occurred, taxpayer's claim that the chapter 123, 15%-test should apply was not considered.

It is noted that the municipality’s expert herein presented an appraisal consisting of 77 pages and even then much necessary data was not included.

Compare Burlington Tp. v. Messer, 8 N.J. Tax 274 (Tax Ct.1986), aff'd 9 N.J. Tax 634 (App.Div.1987); S. Brunswick Tp. v. Bellmead Dev. Corp., 8 N.J.Tax 616 (Tax Ct.1987) (For farmland assessment rollback purposes pursuant to N.J.S.A. 54:4-23.8, nonuse is a change in use even though the property's use was not changed to another purpose.)