AXELRAD, J.T.C.
For the 1997 and 1998 tax years, the parcels designated as Block 1079, Lots 1 and 2, on the Township of Lakewood, Tax Map, were assessed at $327,000 and $372,000, land only, respectively. Pursuant to a stipulation of settlement entered into between the parties, a Tax Court judgment was entered on October 19, 1998 for tax year 1997, in the amount of $230,000 per lot, land only. The stipulation was silent as to applicability of the’ Freeze Act, N.J.SA. 54-.51A-8, since the pai'ties were unable to settle that issue and had agreed to litigate it in a subsequent proceeding. No *119 complaint was filed by either party for the 1998 tax year. The parties have until April 1, 1999 to file an appeal for the 1999 tax year.
The taxpayer’s attorney filed an application for judgment to “freeze” the assessments of the subject property for tax years 1998 and 1999, based upon the Tax Court judgment for base year 1997. The municipality seeks avoidance of the “freeze” for 1998, claiming that the subject property substantially increased in value due to an external factor which materialized after October 1, 1996, the assessing date for the base year. Specifically, the subject property, which originally had municipal site plan approval for a 54,800 square foot retail center, was granted conditional municipal preliminary and final site plan approval for construction of a 132 unit apartment complex on July 15, 1997, memorialized by Resolution dated August 19, 1997. According to the municipality, the subject property “with approvals” is worth substantially more than “without approvals.”
The site plan approval was granted subject to “post[ingj a performance bond for any improvement in connection with this application, if applicable, in an amount determined by the Township Engineer, complying] with all conditions as required by Federal, State or local law [and] obtaining] all other approvals as required by law” which, according to the taxpayer, include compliance with the Coastal Area Facility Review Act (“CAFRA”), as mandated by the New Jersey Department of Environmental Protection (“DEP”), and meeting the standards of the New Jersey Department of Transportation (“DOT”). The taxpayer submits that, since the Resolution required several governmental regulatory approvals and the majority of the approvals and permits were not granted until after the valuation date for the 1998 freeze year (October 1, 1997), with some still pending, the property, in essence, had no approvals at that time. As such, there was no increase in value from the base year.
The Freeze Act, N.J.S.A. 54:51A-8, provides, in part:
Where a final judgment has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor *120 and the taxing district, parties to the proceeding, for the assessment year and for 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date.
The Freeze Act was intended to eliminate “repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals.” City of Newark v. Fischer, 8 N.J. 191, 199-200, 84 A.2d 547 (1951); N.J.S.A. 54:51A-8. Of course, a municipality should not be permitted to thwart the Legislature’s intent by “merely demonstrating a substantial degree of increased value by any of the normally recognized approaches to value.” Cumberland Arms v. Burlington Tp., 10 N.J.Tax 255, 266 (Tax 1988). If this were the standard, the court would have to require a full valuation hearing; an illogical result that would ‘Tender the Freeze Act meaningless” and subject “the property owner to the very evils which the statute sought to remedy.” Id. at 267.
In order to defeat the freeze and be entitled to a plenary hearing, the municipality must set forth a prima facie demonstration that a change in value occurred and that the municipality is entitled to a plenary hearing, indicating that: “(1) the change in value results from an internal or external change; (2) the change materialized after the assessment date of the base year, and (3) the change substantially and meaningfully increased the value of the property”. AVR Realty Co. v. Cranford Tp. (“AVR II”), 316 N.J.Super. 401, 407-08, 720 A.2d 434 (App.Div.1998) (citations omitted).
The burden of showing that the Freeze Act should not apply is upon the municipality. Union Minerals and Alloys Corp. v. Kearny, 11 N.J.Tax 280, 283 (Tax 1990) (citing Hudson Terrace Apartments v. Fort Lee Boro., 2 N.J.Tax 457 (Tax 1981), rev’d. on other grounds, 191 N.J.Super. 489, 467 A.2d 1092 (App.Div.1982)). See also Clearview Gardens v. Parsippany-Troy Hills Tp., 196 N.J.Super. 323, 482 A.2d 523 (App.Div.1984); Cumberland Arms *121 v. Burlington Tp., supra, 10 N.J.Tax 255. The test as set forth by Judge Lario in Cumberland Arms is two pronged.
fl]n order for a taxing district to satisfy its burden of proof to defeat application of the Freeze Act it must first demonstrate by competent evidence that the alleged change is the result of either an internal or external change that materialized subsequent to the assessment date of the base year and that the change substantially and meaningfully increased the property’s value.
[Id. at 263.]
Before the court reaches the issue as to whether there has been a substantial change in the value of the subject property because of the subsequent municipal approval to build multiple apartment housing units, the court must first determine whether the municipality has presented a prima facie allegation of change in value. If the municipality has provided sufficient evidence to raise a debatable question as to whether there has been a change in value as such term is used in N.J.S.A. 54:51A-8, it is entitled to a plenary hearing.
The municipality alleges that the preliminary and final site plan approval by the planning board, subject to routine governmental regulations necessary to obtain a building permit, substantially increased the value of the subject property from the base year to the freeze year. In support of its position, the municipality submitted the certification of its assessor, portions of the appraisals of the parties for tax year 1997, and a letter written by its appraiser. The assessor concludes that a “substantial and meaningful increase in the property arose from the grant of municipal site plan approval for construction of the 132 unit apartment complex” based on the fact that taxpayer’s appraiser, in his report for the 1997 tax year, himself adjusted two comparable sales downwards by 25% as a result of them lack of approvals. She also references a contract of sale for a similarly sized vacant parcel a few hundred feet away from the subject property, which only had preliminary site plan approval for 820 apartment units, with closing contingent upon the seller is obtaining final municipal approval. She asserts that the higher sales price of $9,375 per unit as compared to the subject property assessment of $5,460 per *122 unit[1], is indicative of the increased value attributable to the approvals in the marketplace.
The municipality’s appraiser concurred with the assessor’s conclusion that obtaining final municipal planning board approval for development, even with additional permits and approvals pending, “in and of itself causes a substantial and meaningful increase in the value of vacant land.” He, substantiates his observations that “many, if not most transactions of unimproved land parcels are conditional upon receiving preliminary or final municipal site plan approval,” and that “most real estate appraisers recognize and reflect the increase in value of unimproved land created by obtaining municipal and other approvals” with reference to adjustments made in sales comparison grids, a list of unimproved land sales which occurred shortly after receipt of preliminary or final site plan approval, and a chart summarizing some examples of paired sales before and after municipal approvals were obtained indicating a significant percentage change. The appraiser also recounts conversations with developers and lenders who indicate that municipal site plan approvals are crucial for obtaining construction loans and DEP permits, and that these approvals are the “most time consuming and costly step in the entire improvement process,” after which “other necessary approvals normally follow in due course.”
The taxpayer submitted an opposing certification of one of its managing members that between the base year valuation date of October 1,1996 and the first freeze year valuation date of October 1, 1997, the only condition satisfied as required by the municipal resolution was county planning board site plan approval. He lists the following approvals which were subsequently obtained:
DOT drainage permit, March 12,1998,
CAFRA permit, April 30,1998,
Municipal MUA waste and sewer conceptual approval, June 2,1998,
County Soil Conservation District certification, June 19,1998,
*123 DOT road opening permit, September 22,1998.
Since the 1999 valuation date (October 1, 1998), the county MUA granted an approval for sewer on November 23, 1998, and the municipal MUA granted sanitary sewer technical approval on December 1, 1998. As of December 21, 1998, the DEP Sanitary Sewer extension permit, municipal MUA Technical Water approval and final sewer and water approval were pending. The managing member concludes that the value of the property did not “substantially and meaningfully increase” subsequent to October 1, 1996, since the majority of the approvals and permits necessary to satisfy the conditions of the Resolution were obtained and/or granted subsequent to the freeze year valuation date for the 1998 tax yeaiv
The taxpayer asserts that the standard for “increase in value” should be final approval as defined in the Municipal Land Use Act, N.J.S.A. 40:55D-4:
[T]he official action of the planning board taken on a preliminarily approved major subdivision or site plan, after all conditions, engineering plans and other requirements have been completed or fulfilled and the required improvements have been installed or guarantees properly posted for their completion, or approval conditioned upon the posting of such guarantees.
According to the taxpayer, the Legislature requires more than just the official action of the planning board and contemplates the receipt of all approvals and permits necessary for construction. Under this interpretation, the taxpayer did not have final approval as of the freeze year valuation dates of October 1, 1997 and October 1, 1998, since none of the improvements were installed or guarantees posted, the regulatory approvals were pending, and the taxpayer could not obtain a building permit to utilize the property fully as of those dates. Accordingly, the taxpayer asserts that, since a project is still risky and speculative until final approval is granted, the subject property was of no greater value after planning board approval than the assessment that was stipulated to by the taxpayer for the 1997 tax year.
Contrary to the taxpayer’s position, final approval under the Municipal Land Use Act does not require that every regulatory approval be granted and permit be issued and that the developer *124 be ready to put the spade in the ground. Rather, final approval is granted “if the detailed drawings, specifications and estimates of the application for final approval conform to the standards established by ordinance for final approval, [and] the conditions of preliminary approval ...,” i.e. the municipal conditions, are satisfied. N.J.S.A 40:55D-50(a). MUA, DEP and DOT requirements are conditions precedent to obtaining building permits, not to obtaining municipal approvals. The Legislature expressly recognized the time delay in obtaining the necessary financing, regulatory permits, and completion of other steps necessary for development, after receipt of final site plan approval, by the statutory grant of two years plus three one-year extensions of final approval, as well as an additional one year extension,
if the developer proves to the reasonable satisfaction of the [planning] board that the developer was barred or prevented, directly or indirectly, from proceeding with the development because of delays in obtaining legally required approvals from other governmental entities and that the developer applied promptly for and diligently pursued these approvals.
N.J.S.A. 40:55D-52.
Of most relevance to this matter are the property rights that the Legislature conferred upon the developer automatically upon final approval of a site plan. During the above-mentioned approval period, the developer is protected against rezoning and retains all other rights encompassed in the preliminary site plan approval. Ibid. The economic reality is not whether each and every condition of final site plan approval has been satisfied, but the perception in the marketplace that a protected right has been conferred on the property, and that there is a value attributed to that right. According to the undisputed evidence of the municipality’s experts, which are substantiated by reference to the marketplace, as opposed to the net opinion of taxpayer’s managing member, preliminary and final site plan approval, regardless of regulatory approvals, has some value. If the conditions are more cumbersome and expensive, the approval will be worth less, and, when the building permit is issued and construction commences, the approval will be worth more, but the property appears, at least on the *125 basis of the proofs before the court at the present time, to be more valuable with municipal approvals than without them.
As of the dates of valuation of the 1998 and 1999 freeze years, taxpayer met all municipal conditions for the grant of preliminary and final site plan approval. The court finds that the planning board approval of July 15, 1997 constitutes an external change subsequent to the assessment date of the base year and the evidence presented by the municipality in opposition to the Freeze Act application creates a prima facie demonstration, that is, raises a debatable question, of a change in value. Consequently, the municipality is entitled to a plenary hearing to determine whether the change in value was sufficient to deflect the freeze sought by taxpayer. See AVR II, supra, 316 N.J.Super. 401, 720 A.2d 434.
The court’s decision is not a determination on the merits of the taxpayer’s Freeze Act application, but only that the municipality has presented sufficient proof to enable it to proceed with a plenary hearing. The hearing will not require full-blown appraisal reports and will not be a hearing on the value of the property in 1997 and the two subsequent tax years. The sole issue to be addressed is the percentage or degree of increase value, if any, attributable to the site plan approval. The burden will remain on the municipality to present competent evidence that the other approvals and permits follow in due course and that the final site plan approval, which was granted with conditions on July 15, 1997, substantially and meaningfully increased the value of the subject property for the 1998 and 1999 tax years.

 Based on the $699,000 assessment for 1998 and 1999 divided by 128 units, as CAFRA reduced the number of units on the subject property from 132 to 128.