NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

```
------------------------------------------------------x
PELLA, L.L.C.,                          :
                                        :    TAX COURT OF NEW JERSEY
            Plaintiff,                  :    DOCKET NO:   013605-2020
                                        :                 010231-2021
            v.                          :
                                        :
CITY OF CAPE MAY,                       :
                                        :
            Defendant.                  :
                                        :
------------------------------------------------------x
```

Decided: May 3, 2024.

William T. Rogers, III for plaintiff (Archer & Greiner, P.C.).

Christopher Gillin-Schwartz for defendant (Gillin-Schwartz Law, LLC).

CIMINO, J.T.C.

Taxpayer alleges the assessor erred when he increased an assessment after site plan and subdivision approval but prior to the recording of the subdivision plat. The municipality disagrees asserting the Correction of Errors statute only provides relief in certain statutorily delineated instances. The actions of the assessor are not sufficiently certain so as to constitute an indisputable mistake in the tax assessment; nor would any relief be readily inferable or subject to easy calculation. The court rejects taxpayer's claim for relief under the Correction of Errors statute.

-1-

Plaintiff taxpayer, Pella, LLC (Pella), is the owner of an entire block in the City of Cape May (City). The City's tax maps designated the property as Block 1176. On January 13, 2015, Pella obtained final site plan and major subdivision approval for the block. The approval included permission to construct a street down the middle of the block with seven subdivided parcels on one side of the new street and eight subdivided parcels on the other side. Pella was responsible for constructing site improvements including the new street, curbs and sidewalks, water and sewer lines, stormwater control, and landscaping.

The approval did not require any zoning variance. The subdivided parcels conform with the zoning ordinance's lot size, setback, lot width, frontage and bulk requirements. Pella did obtain a de minimis exception from the Residential Site Improvement Standards reducing the right-of-way for the new street from fifty feet to forty feet. However, there was not any reduction of the mandated street width of twenty-eight feet.[1]

On May 13, 2016, Pella submitted a Letter of Credit for $740,000 as a performance guarantee for the improvements. On June 13, 2016, the City engineer pointed out certain incomplete items. The City engineer indicated filing of the final

---

[1] The board waived certain drawings of off-site conditions. Also, while the Residential Site Improvement Standards only required sidewalks on one side, the preliminary approval seems to allude to a local ordinance requiring sidewalks on both sides. In any event, the board specifically waived the requirement for sidewalks on both sides.

subdivision plat with the county land records required a completed stormwater maintenance plan, and a review of the homeowner's association documents, the draft deed restrictions and the subdivision plat. On February 28, 2017, Pella deeded an electrical service utility easement listing the fifteen lots separately.

By May 1, 2017, the City engineer reported Pella's completion of nearly 100% of the stormwater management improvements, 80% of the curbing, as well as a significant portion of the water and sewer lines. Based upon this progress, the City engineer recommended reducing the performance guarantee to slightly over $400,000.

By October 25, 2017, the engineer noted the completion of even more work. The additional work included completion of the sidewalks, curbs, the new road except for the topcoat, and 90-100% of the water and sewer lines. The engineer recommended reduction of the performance guarantee to approximately $300,000.

By April 26, 2019, completed site work included placement of signage, most of the water and sewer lines, and a significant portion of the landscaping. At this point, the engineer recommended reduction of the performance guarantee to a little bit over $200,000.

Pella applied for a construction permit to begin building homes. The construction office refused to issue the permit without the subdivision plat filed with the county land records. On October 15, 2020, Pella made application to the City

planning board to extend the subdivision approval. To support the application, Pella asserted the expenditure of significant resources in reliance on the approval including the completion of necessary site improvements. Pella further noted the assessor had already assessed the building lots individually. Pella also indicated the approval extension was pursuant to the Municipal Land Use Law and two permit extension acts.

The City planning board promptly met on November 10, 2020, but carried the meeting to November 24, 2020, due to technical difficulties. At the later meeting, the board extended the major subdivision approval and then adopted a conforming written resolution on December 8, 2020. The resolution articulated the City, applicant and assessor proceeded with the understanding and belief there was an approved subdivision. The planning board unanimously passed the extension resolution by 8-0.

Some three weeks after obtaining the extension of the site plan and subdivision approval, Pellas filed the Correction of Errors complaint. The property had an initial assessment of $2.8 million. After the 2015 final site plan and subdivision approval, the assessor listed the block as fifteen separate building lots, with an aggregate assessment of $13 million. The assessment of each parcel was

between $800,000 to $900,000.[2]  Pella asserts the tax assessor erred in increasing the assessment on the property from 2018 through 2021 without a subdivision plat duly filed with the county land records.

This matter comes before the court on cross-motions for summary judgment. On summary judgment, the court must assess "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).  While not a per se rule, "[t]he filing of a cross-motion for summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact, because the act of filing the cross-motion represents to the court the ripeness of the party's right to prevail as a matter of law." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008). However, cross-motions do not compel the granting of summary judgment one way or the other.  Ibid.

October 1st of the prior tax year is the assessment date for property.  N.J.S.A. 54:4-23.  Every year, the assessor mails each taxpayer a "Chapter 75" postcard with the assessment.  N.J.S.A. 54:4-38.1.  L. 1991, c. 75, §32.  In most counties, the

---

[2]  To be exact, the initial assessment of the block was $2,788,400, the aggregate assessment of the fifteen lots is $13,040,800, and the individual lots are assessed from $839,600 to $900,800.

taxpayer has until April 1st to file a tax appeal.  N.J.S.A. 54:3-21.  Strict enforcement of short filing deadlines is necessary so municipal governments may ascertain their tax ratables and adopt a responsible and fairly accurate budget.  F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 424-25 (1985).

The exception to the April 1st filing deadline is the Correction of Errors statute, which allows the "filing of a complaint at any time during the tax year or within the next 3 tax years thereafter, . . . to correct typographical errors, errors in transposing, and mistakes in tax assessments . . . ."  N.J.S.A. 54:51A-7.  When first adopted in 1905, the statute did not limit the time to seek relief, nor the types of correctable errors.  L. 1905, c. 67, § 5.  See also Hovbilt, Inc. v. Township of Howell, 138 N.J. 598, 604 (1994).  In 1979, legislative amendments limited the time to seek relief to within the tax year or the ensuing three years, and narrowed the relief to "typographical errors, errors in transposing, and mistakes in tax assessments."  N.J.S.A. 54:51A-7.  L. 1979, c. 44, §1.  In addition, with the 1979 amendments, the "court shall not consider . . . any complaint relating to matters of valuation involving an assessor's opinion or judgment."  Ibid.  The Legislature wanted "a more carefully defined and limited procedure . . . not intended [to] be used for settlement of challenges of an assessors [sic] opinion as to value of a parcel of real property . . . ."  Hovbilt, 138 N.J. at 605 (quoting S. Revenue, Fin. & Appropriations Comm. Statement to S. 1103 2 (Sept. 18, 1978)).

Our Supreme Court understood the exclusion of matters of valuation involving an assessor's opinion of judgment "as a clear expression of legislative intent to limit the statutory authorization to the correction of mistakes that are indisputable and not subject to debate about whether the assessment to be corrected resulted from an assessor's exercise of discretion."  Hovbilt, 138 N.J. at 618. "Accordingly, [the Supreme Court held] that mistakes in assessments that are indisputable, and cannot plausibly be explained on the basis of an exercise of judgment or discretion by the assessor or his or her staff, are within the category of mistakes that can be corrected under the statute." Ibid.

In Hovbilt, the Township misplaced Hovbilt's application for farmland assessment.  Id. at 601.  Hovbilt conceded if Correction of Errors relief was available, farmland assessment would not automatically follow.  Id. at 619.  In rejecting Correction of Errors relief, the Court found "although the tax assessor's misplacing of the application is uncontested, we are unpersuaded that Hovbilt has established the existence of an indisputable mistake in its tax assessment, or that the relief sought is readily inferable or subject to ready calculation." Id. at 621.  "[T]he essential factual questions that determine whether the property is to be assessed as farmland and, if so, the value of the land have not been addressed.  Because those questions may themselves result in dispute and future litigation, [the Court could not] conclude that the 'mistake in tax assessment' and the appropriate relief therefor

are subjects of sufficient certainty to justify relief under the abbreviated and extraordinary procedures authorized by the Correction of Errors statute." Id. at 622.

In essence, the Supreme Court set up a two-part test. First, is the mistake "sufficiently certain so as to constitute an indisputable mistake in tax assessments . . . ++++." Id. at 622. Second, is the relief readily inferable or subject to easy calculation. Ibid. Both prongs are necessary for relief.

The Municipal Land Use Law adopted in 1975 governs land development. N.J.S.A. 40:55D-1 to -163. L. 1975, c. 291. The law protects a developer from changes in the general terms and conditions of an approval, as well as zoning requirements, for a period of two years from final approval of a site plan or major subdivision. N.J.S.A. 40:55D-52(a), -49 (incorporated in part by reference into section 52). In the case of a major subdivision, the signatures of the planning board chair and secretary on the plat evince the approval. N.J.S.A. 40:55D-54(b). The protections expire without a signed plat recorded in the county land records. N.J.S.A. 40:55D-52(a).

If a developer of a major subdivision has followed the standards prescribed for final approval and has duly recorded the plat, the planning board may extend the period of protection for three years in one-year increments.[3] Ibid.

_____

[3] A developer can also seek extensions to file the plats. N.J.S.A. 40:55D-54(a).

Pella never received a signed plat to record. It is not necessary to determine whether Pella should have been more diligent as to receipt of the plat or the City should have realized the plat was unrecorded. Obviating any dispute was the parties' realization as a practical matter the project was moving along as if there was a recorded plat. Moreover, the record does not reveal any changes in the zoning requirements for the block under development, nor did the City seek any additional exactions from the developer when it extended the approval.

Pella asserts it could not build on its fifteen-unit subdivision without filing the plat. And, until filing of the plat, Pella asserts it was improper for the assessor to raise the total assessment and bill the parcels separately. The City counters everyone considered the property subdivided and acted in that fashion.

Both in its moving papers and in oral argument, Pella is unable to point out how, as a practical matter, recording the plat sooner would have impacted the timing of the improvements and development of the property. Pella posted a performance guarantee with the City, made various improvements, and continued on with developing the property. There was not any roadblock until Pella could not pull a construction permit. Once that happened, Pella and the City worked together to remedy the issue in under sixty days. Pella asserts the assessment should be set back to $2.8 million.

Pella essentially argues that upon the expiration of the approval on June 30, 2017, it did not have a right to the site plan and subdivision, and therefore the assessment reverts to its original value.[4] Even with the granting of the three retroactive one-year extensions, Pella still claims entitlement to a reduction until filing of a signed plat.

Pella does not satisfy the two-part Hovbilt test requiring a sufficiently certain indisputable mistake with a readily inferable or easily calculated correction. 138 N.J. at 621, 622. First, the assessor's actions are not sufficiently certain as to constitute an indisputable mistake. As required by the approval, Pella obtained a performance guaranty. See N.J.S.A. 40:55D-53. Pella commenced making improvements to the property. The City reduced the performance guaranty as the improvements progressed. Pella recorded an easement for electric service listing the lots separately. In its application for extension, Pella represented it was improving the lots and paying the increased taxes on the separate parcels as a reason for the extension. The assessor had listed each of the lots separately and imposed an assessment for each lot. As a practical matter, both parties agree they were acting as if the approval remained in effect.

---

[4] Under the Permit Extension Act of 2008, the approval expired on June 30, 2017, slightly more than two years. N.J.S.A. 40:55D-136.3, 136.4(a)(2).

This was not a project the City did not approve or where Pella did not proceed. The parties forgot to record the plat. Pella wants to take advantage of this snafu even though the practical reality on the ground, literally, was the project was proceeding. Taxation is a practical matter. In re Lichtenstein's Estate, 52 N.J. 553, 569 (1968). Pella does not actually seek the correction of a mistake. Rather, Pella seeks a windfall based upon its own technical failure to record the plat or seek extensions. The failure to record the plat never impaired Pella's progress in developing the property. With the City planning board approving the three retroactive one-year extensions, it is as if there were approvals all along. There was no mistake the project was going forward.

Second, even if the circumstances constitute an indisputable mistake, its correction is not readily inferable or subject to easy calculation based solely on the nature of the mistake. Hovbilt, 138 N.J. at 621, 622. This court considered the impact of site plan approval in Rockstone Group v. Township of Lakewood, 18 N.J. Tax 117 (Tax 1999). "[S]ite plan approval was granted subject to posting a performance bond for any improvement . . . and obtaining all other [governmental] approvals . . . ." Id. at 119. The municipality wanted to avoid a prior Tax Court judgment that had frozen the assessment for the settlement year and two subsequent years. Id. at 119-20. See N.J.S.A. 54:51A-8 (Freeze Act). "[F]inal approval under the Municipal Land Use Act does not require that every regulatory approval be

granted and permit be issued and that the developer be ready to put the spade in the ground." Id. at 123-24. "The economic reality is not whether each and every condition of final site plan approval has been satisfied, but the perception in the marketplace that a protected right has been conferred on the property, and that there is a value attributed to that right." Id. at 124. The planning approval raised a debatable question as to value. Id. at 125.

There is not a dispute the planning board conferred a protected right as to the property, at least through June 30, 2017. However, at no point after June 30, 2017, did the City take any steps, nor did Pella act in a way, indicative of the loss of protected rights. Everyone perceived the approval had continuing validity. Everything was a green light to go.

Both parties' actions clearly warranted extension of the approval. The parties concur the extension was appropriate. Pella is certainly not arguing lack of entitlement to the extensions, or it obtained something extra-legal. It goes without saying that the approval, even if not properly perfected for a period of time, had value vis-a-vis the property.

While Rockstone focuses on actual approvals, New Jersey courts have long and frequently recognized the reasonable probability of obtaining an approval is sufficient to impact value. State by State Highway Comm'r v. Gorga, 26 N.J. 113, 116 (1958); State by Comm'r of Transp. v. Caoili, 135 N.J. 252, 265 (1994);

Borough of Saddle River v. 66 East Allendale LLC, 216 N.J. 115, 119, 143 (2013); Township of Manalapan v. Gentile, 242 N.J. 295, 308 (2020); Six Cherry Hill, Inc. v. Township of Cherry Hill, 7 N.J. Tax 120, 129 (Tax 1984), aff'd o.b., 8 N.J. Tax 334 (App. Div. 1986); Schimpf v. Township of Little Egg Harbor, 14 N.J. Tax 338, 346 (Tax 1994); BASF Corp. Coating & Ink Div. v. Town of Belvidere, 23 N.J. Tax 551, 563-64 (Tax 2007). Pella not only had the probability of approval, but previously obtained an approval. There is no evidence offered establishing Pella faced any serious risk of not obtaining any extensions of the prior approval.

"[F]air market value of [a] property [is] determined by what a willing buyer and a willing seller would agree to, neither being under any compulsion to act." Caolli, 135 N.J. at 260. In valuing a property, the court looks to the highest and best use which requires a consideration of what is legally permissible upon a property. Caolli, 135 N.J. at 260. A "critical inquiry is the reasonable belief by a buyer and seller engaged in voluntary negotiations over the fair market value of property that a [zoning] change may occur and will have an impact on the value of the property regardless of the degree of probability." Caolli, 135 N.J. at 264-65. A factfinder "may consider a potential zoning change affecting the use of the property provided the court is satisfied that the evidence is sufficient to warrant a determination that such a change is reasonably probable." Caolli, 135 N.J. at 265. When a jury is the factfinder such as in the case of a condemnation trial, "[t]he trial court should

examine the evidence proffered in support of the reasonable probability of a zoning change and determine whether it can render its required determination based on the papers." 66 East Allendale, 216 N.J. at 143. Only then is the matter submitted to a jury. Id. at 142-43.

Pella enjoyed more than the reasonable probability of a zoning change. First, the steps taken to effectuate a subdivision are a relevant consideration. Caolli, 135 N.J. at 267-68. The City previously granted site plan and subdivision approval. There is not any evidence indicating the City had a basis to deny any extension. To the contrary, the City was proceeding with approving the construction of the site improvements and periodically reducing the performance guaranty.[5]

Second, the subdivision did not require a zoning change, just site plan and subdivision approval. Short of an ordinance amendment, a variance accomplishes a zoning change.[6] A variance requires the "showing that such variance or other relief can be granted without substantial detriment to the public good and will not

---

[5]  Both parties cited Beranto Towers v. City of Passaic, 1 N.J. Tax 344 (Tax 1980) in support of their respective positions. However, Beranto is inapposite to the case at hand since it concerned an added assessment to a completed structure. Id. at 346. An added assessment only covers part of a year until placement of a regular assessment. See Id. at 346-47. It only applies to structures, not site improvements. Township of Hopewell v. Monmouth Cnty. Bd. of Tax'n, 18 N.J. Tax 149, 163 (Tax 1999). Thus, the arguments over economic viability and the need for a certificate of occupancy are not applicable. See Beranto, 1 N.J. Tax at 348-49.

[6]  "'Variance' means permission to depart from the literal requirements of a zoning ordinance . . . ." N.J.S.A. 40:55D-7.

substantially impair the intent and the purpose of the zone plan and zoning ordinance." N.J.S.A. 40:55D-70. This stringent standard reflects "the Legislature's apparent objective and strong legislative policy of encouraging municipalities to make zoning decisions by ordinance rather than by variance." Chesterbrooke Ltd. P'ship v. Planning Bd. of Chester, 237 N.J. Super 118, 127 (App. Div. 1989). In this case, the subdivided parcels met the zoning ordinance's lot size, setback, lot width, frontage and bulk requirements.[7] Applications without a variance are as-of-right. See Mountain Hill, LLC v. Zoning Bd. of Adjustment of the Tp. Of Middleton, 403 N.J. Super. 210, 218 (App. Div. 2018).

Based upon the evidence presented, there was a reasonable probability at the time of the 2018, 2019, 2020, and 2021 assessments the subdivision would go forward. The evidence here is more than "mere speculation." See 66 East Allendale, 216 N.J. at 142. "[T]he evidence is of a quality to allow [a factfinder] to consider the probability of a zoning change should [the factfinder] be permitted to assess a premium based on that zoning change." See Ibid. Consideration of the probability of a planning board approval and the premium which attaches is the subject of a regular appeal, not a Correction of Errors application.

---

[7] The City granted a de minimis exception to the Residential Site Improvement Standards reducing the right-of-way of the new street from fifty feet to forty feet. See N.J.A.C. 5:21-4.2, -4.5 -3.1. However, the bed of the new street remained at twenty-eight feet. N.J.A.C. 5:21-4.2, -4.5.

Certainly, the premium for approvals is greater with an unexpired approval and a recorded subdivision plat. While the premium here may or may not be the full increase to $13 million, the premium is likely not zero. Any reduction in the aggregate assessment is subject to debate. Debates over the correct assessment value cannot be the subject of Correction of Errors complaints. The assessment must be readily inferable or subject to easy calculation. Hovbilt, 138 N.J. at 622. Pella's remedy was to timely file a regular appeal.

Overall, Pella's assessment, as well as its taxes, increased five-fold. Pella is hard pressed to assert it was unaware that the assessment had changed. Pella repeatedly did not file regular appeals by the April 1ˢᵗ deadline of each tax year. Pella seeks the extraordinary remedy available through a Correction of Errors complaint allowing a filing up to three years after the tax year. Even with expired approvals and an unrecorded plat, it is reasonably probable the overall value of the land increased, even if not to the full $13 million overall assessment. Since a debatable question of assessment value remains, Correction of Errors relief is not available.

For the foregoing reasons the court dismisses Pella's Correction of Errors claims.